```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
-------------------------------------------X    ELECTRONICALLY FILED
ALBINO HERNANDEZ,                          :    DOC #:_____
                                           :    DATE FILED: 8/8/2019
                              Plaintiff,   :
                                           :
             -against-                     :    18-CV-7887 (VEC)
                                           :
                                           :    MEMORANDUM
BOUCHERIE LLC d/b/a BOUCHERIE and          :    OPINION AND ORDER
JEROME DIHUI,                              :
                                           :
                              Defendants.  :
-------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Plaintiff Albino Hernandez sued Defendants Boucherie LLC and Jerome Dihui for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq. See* Compl., Dkt. 1. After the parties reached a settlement in principle, they submitted their settlement agreement to the Court for approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). *See* Dkt. 19. In an order dated March 21, 2019 (the "March 21 Order"), the Court denied the motion for approval, finding that the attorneys' fees in the settlement agreement were unreasonably high. *See* Dkt. 23. The Court directed the parties to reduce the fees to $9,100.00 and to resubmit the agreement for approval. *See id.* Plaintiff moves for reconsideration of the March 21 Order. *See* Dkt. 24. For the following reasons, Plaintiff's motion for reconsideration is DENIED. No later than **August 23, 2019**, the parties must resubmit their settlement agreement to the Court for approval. If the parties fail to resubmit their agreement by that date, the Court will order the parties to appear for an initial pretrial conference, in order to set a schedule for discovery.

1

# BACKGROUND

Plaintiff worked for Defendants as a line cook between December 2016 and December 2017. *See* Compl. ¶ 6. Plaintiff alleged that Defendants failed to provide him with proper overtime pay, spread-of-hours pay, wage statements, and wage notices, as required by the FLSA and NYLL. *See id.* ¶¶ 24–28.

Shortly after this case was filed, the Court referred the parties to the District's Mediation Program, pursuant to Local Civil Rule 83.9. *See* Order (Sept. 18, 2018), Dkt. 10. Shortly after their first mediation session, the parties reached an agreement in principle to settle this case. *See* Ltr. (Feb. 13, 2019), Dkt. 17. The parties subsequently entered into a settlement agreement that required Defendants to pay $34,000 to Plaintiff. *See* Settlement Agreement (Mar. 14, 2019), Dkt. 20. The settlement agreement provided that $11,700 of this amount would be paid to Plaintiff's attorneys in fees and costs. *See id.* A letter accompanying the agreement stated that the fees represented one-third of Plaintiff's recovery, the amount that Plaintiff had agreed in his retainer agreement to pay his attorneys as a contingency fee. *See* Ltr. (Mar. 11, 2019), Dkt. 19, at 2–3.

Shortly thereafter, the Court entered the March 21 Order, stating that it would not approve the settlement agreement because the agreement as to attorneys' fees was unreasonable. *See* Dkt. 23. The Court found that both the hourly rates of the attorneys and the amount of time that they had allegedly spent on the case were unreasonable, "given that the Complaint was a standard, boilerplate FLSA complaint and that this case settled in mediation, before any court appearances or filings were required." *Id.* at 1. The Court also noted that "many of the attorneys' time entries for ministerial tasks [were] for '0.10 hours' (often with multiple entries of '0.10 hours' on the same day), suggesting that Plaintiff's attorneys repeatedly rounded up in

recording their hours." *Id.* The Court directed the parties to resubmit their settlement agreement with fees of no more than $9,100, a "generous estimate" of the fees appropriate for this case.

## DISCUSSION

### I. Standard of Review

"A motion for reconsideration should be granted only when [a party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

### II. The Applicable Law

Federal Rule of Civil Procedure 41(a) allows a plaintiff, "[s]ubject to . . . any applicable federal statute" to dismiss an action without a court order by filing a stipulation of dismissal signed by all parties who have appeared. Fed. R. Civ. P. 41(a)(1)(A)(ii). In *Cheeks*, the Second Circuit held that the FLSA is one such "applicable federal statute" and that parties must obtain court approval prior to dismissing FLSA claims with prejudice, even when the dismissal is pursuant to a settlement agreement signed by all parties. *See* 796 F.3d at 206.

The Second Circuit reached this conclusion based on "the unique policy considerations underlying the FLSA": the aim of "insuring to all our able-bodied working men and women a fair day's pay for a fair day's work" and the need "to remedy the evil of overwork by ensuring workers [are] adequately compensated for long hours." *Id.* The Circuit also based its holding on

3

"the potential for abuse" in settlements of wage-and-hour claims, including the practice of including unreasonably high attorneys' fees in settlement agreements without "adequate documentation." *Id.*

Following *Cheeks*, district courts in this Circuit have uniformly held that they are required to scrutinize a settlement agreement to determine that the settlement is fair and reasonable before plaintiffs can be permitted to dismiss FLSA claims with prejudice. *See e.g.*, *Chung v. Brooke's Homecare LLC*, 17-CV-2534, 2018 WL 2186413, at *1 (S.D.N.Y. 2018); *Castillo v. Cranes Express Inc.*, No. 18-CV-1271, 2018 WL 7681356, at *3 (E.D.N.Y. Dec. 12, 2018); *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229 (S.D.N.Y. 2016); *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015); *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). These courts have held that a settlement is "fair and reasonable" if it "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Chung*, 2018 WL 2186413, at *1 (citing *Mamani v. Licetti*, No. 13-CV-7002, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014)).

### III. Plaintiff's Motion for Reconsideration Is Denied

#### A. The Court Has the Authority to Review the Attorneys' Fees in the Parties' Settlement for Reasonableness

Plaintiff argues that *Cheeks* does not afford district courts the authority to reduce attorneys' fees when reviewing a settlement agreement, particularly when the fees represent the amount that the plaintiff agreed to pay his attorneys in his retainer agreement. *See* Pl.'s Mem. of Law, Dkt. 25, at 2. In Plaintiff's view, "a contingency-fee arrangement is valid absent fraud, coercion, or other contractual basis for invalidation," and courts may not "effectively invalidate" such arrangements by reducing the attorneys' fees in a settlement. *Id.* at 1.

4

The Court disagrees. *Cheeks* expressly based its holding on "the potential for abuse" in settlements of FLSA claims and cited, as an example, unreasonably high attorneys' fees.[1] *See* 796 F.3d at 206. Unsurprisingly, then, Plaintiff's argument contradicts the overwhelming weight of authority in this Circuit. District courts in this Circuit—and at least one unreported Second Circuit case—have consistently held that they have the authority to review an attorneys-fee provision in a settlement agreement for reasonableness, regardless of whether the fee represents the share agreed upon in a contingency-fee arrangement. *See Encalada v. Baybridge Enterprises Ltd.*, No. 14-CV-3113, 2014 WL 4374495, at *1 (E.D.N.Y. Sept. 2, 2014), *aff'd*, 612 F. App'x 54 (2d Cir. 2015); *see also, e.g.*, *Chunhua Cui v. Monroe Nail II Corp.*, No. 18-CV-4256, 2019 WL 1643539, at *1 (E.D.N.Y. Apr. 16, 2019); *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17-CV-3302, 2019 WL 95638, at *2 (S.D.N.Y. Jan. 2, 2019); *Pinguil v. We are all Frank, Inc.*, No. 17-CV-2237, 2018 WL 2538218, at *4 (S.D.N.Y. May 21, 2018); *cf. Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) ("[The] FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.").

Reviewing attorneys' fees for fairness and reasonableness serves another policy underlying *Cheeks*: "ensuring workers [are] adequately compensated" for their work. *Cheeks*, 796 F.3d at 206. Absent judicial scrutiny, excessive attorneys' fees could leave plaintiffs

---

[1] Plaintiff argues that *Cheeks* "expressed concern only with contingency fee agreements that deviate from the traditionally approved one-third contingency fee." Pl.'s Mem. of Law at 5. The Court disagrees. Although it is true that when discussing excessive attorneys' fees as an example of "the potential for abuse" in FLSA settlements, *Cheeks* referenced a settlement agreement that had provided for upwards of 40 percent of the recovery to be paid to the plaintiff's attorney, 796 F.3d at 206, nothing in *Cheeks* cabined its holding to attorneys' fees that exceed one-third of the plaintiff's recovery. The prior case that *Cheeks* cited was clearly intended as a non-exhaustive example of abusive attorneys' fees. Indeed, the opinion in *Cheeks* does not even mention that the "traditional one-third arrangement" played any role in its analysis.

5

substantially undercompensated for the wages that they should have earned had their employer followed proper wage-and-hour practices. *See Encalada*, 2014 WL 4374495, at *1 ("[T]he Court's primary function is to make sure that some of the plaintiff's recovery has not been unreasonably diverted to pay his attorney a greater fee than that to which he is entitled.").

Plaintiff's argument that the Court's review impedes his "freedom to contract with his attorneys" has been repeatedly rejected by district courts. *See, e.g.*, *Pinguil*, 2018 WL 2538218, at *4; *Chunhua*, 2019 WL 1643539, at *1 ("Although courts in this Circuit frequently approve one-third contingency fees in FLSA cases, this Court was nevertheless under an obligation to ensure that the fee in this case would not disproportionately compensate plaintiffs' counsel in light of the time and effort expended, as well as the results achieved for the clients."). And with good reason. By filing an action on this Court's docket, Plaintiff subjected himself—and the contract that he signed with his attorneys—to the Federal Rules governing procedures in this Court. Plaintiff now wishes to dismiss his action with prejudice, but pursuant to *Cheeks*, Rule 41(a) does not permit him to do so unless and until the Court finds that the parties' settlement agreement accords with the policies and purposes underlying the FLSA. *See Cheeks*, 796 F.3d at 206. Put simply, Plaintiff's right to contract with his attorneys must yield to this Court's statutory obligation to review settlement agreements for reasonableness.[2]

---

[2] Plaintiff cites two Second Circuit cases for the proposition that courts must enforce privately negotiated contingency-fee arrangements absent fraud or duress. *See* Pl.'s Mem. of Law at 2–3. These cases, however, expressly recognized that such arrangements may be subject to modification when claims are brought under a fee-shifting statute, such as the FLSA. *See Uy v. Bronx Mun. Hosp. Ctr.*, 182 F.3d 152, 157 (2d Cir. 1999) ("The considerations that enter into whether a privately negotiated fee was 'excessive' . . . are very different from those used to determine an appropriate fee award under a fee-shifting statute."); *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990) ("[W]here there is a contingency fee agreement in a successful social security case, the district court's determination of a reasonable fee . . . must begin with the agreement, and the district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable.").

A third case upon which Plaintiff relies, *In re Lawrence*, 24 N.Y.3d 320, 339 (2014), examined whether a retainer agreement was voidable under the unconscionability principles of New York contract law. It says nothing about a court's obligations to review attorneys' fees under federal law.

The Court, nevertheless, is mindful that "'adequate compensation for attorneys who protect wage and hour rights furthers the remedial purpose of the FLSA' by attracting counsel to take on workers' cases." *Alvarez v. Sterling Portfolio Inv., LP*, No. 16-CV-5337, 2017 WL 8790990, at *5 (E.D.N.Y. Dec. 13, 2017) (quoting *Henry v. Little Mint, Inc.*, 12-CV-3996, 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014)). For that reason, courts have held that a one-third contingency-fee award is "presumptively" enforceable, and such fees have often been found to be fair and reasonable in light of the FLSA's statutory purposes. *Angamarca v. Hud-Moe LLC*, No. 18-CV-1334, 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018). But that principle does not, as Plaintiff argues, wholly immunize attorneys' fees from judicial scrutiny, in light of the obligations imposed by *Cheeks*.

### B. The Court Did Not Clearly Err in Finding That the Attorneys' Fees Requested in the Parties' Settlement Were Unreasonable

#### 1. Legal Standard

"In determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "While 'there is a strong presumption that the lodestar figure is reasonable,' it may be adjusted by a multiplier when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *3 (S.D.N.Y. July 1, 2015) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)). Among the factors relevant in determining the reasonableness of a fee are "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy

7

considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also Lizondro-Garcia*, 2015 WL 4006896, at *3 (collecting cases).

Even when a plaintiff has entered into a contingency-fee arrangement with his attorneys, and "even when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Lazo*, 2019 WL 95638, at *2 (citing *Goldberger*, 209 F.3d at 50); *see also, e.g.*, *Velandia v. Serendipity 3, Inc.*, No. 16-CV-1799, 2018 WL 3418776, at *4 (S.D.N.Y. July 12, 2018); *Pinguil*, 2018 WL 2538218, at *5; *Mendoza v. AZK Restaurant, Inc.*, No. 16-CV-2286, 2017 WL 946330, at *1 (S.D.N.Y. Feb. 22, 2017).

2. **Hourly Rates**

In the March 21 Order, the Court reduced the hourly rate of the partner on Plaintiff's legal team, Louis Pechman, from $600 to a very generous $500 per hour. *See* Dkt. 23. To the extent that Plaintiff seeks reconsideration of this ruling, the application is denied. Although Pechman has a substantial number of years' experience litigating employment-law claims, numerous courts in New York City "have determined . . . that a fee ranging from $250 to $450 [per hour] is appropriate for experienced litigators in wage-and-hour cases." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014); *see also, e.g.*, *Cortes v. New Creators, Inc.*, No. 15-CV-5680, 2016 WL 3455383, at *7 (S.D.N.Y. June 20, 2016) (collecting cases); *Lizondro-Garcia*, 2015 WL 4006896, at *7. Accordingly, courts in this City have repeatedly reduced Pechman's hourly rate to $500 or even lower. *See, e.g.*, *Sajvin v. Singh Farm Corp.*, No. 17-CV-04032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018); *Velandia*, 2018 WL 3418776, at *4; *Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666, 2017 WL 3701687, at *7

(E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017); *Manley v. Midan Rest. Inc.*, No. 14-CV-1693, 2017 WL 1155916, at *11 (S.D.N.Y. Mar. 27, 2017); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 475–76 (S.D.N.Y. 2009). The Court agrees with and adopts the reasoning of these courts.

The Court also reduced the hourly rate of the associate on Plaintiff's legal team, Lillian Marquez, from $400 to a generous $300. *See* Dkt. 23. The motion for reconsideration of this ruling is also denied. Courts in this District have repeatedly reduced Marquez's hourly rate to $250, noting that such a rate is consistent with rates for other wage-and-hour attorneys of her experience. *See, e.g.*, *Velandia*, 2018 WL 3418776, at *4 ("Courts in this District routinely approve of an hourly rate for associates between $200 and $300. Nothing in Ms. Marquez's experience suggests that a higher rate would be warranted." (citation omitted)); *Cazarez*, 2017 WL 3701687, at *7 (collecting cases). This Court agrees with and adopts the reasoning of these courts as well.

### 3. Hours Expended

According to their billing records, Pechman expended 2.4 hours on this case, and Marquez expended 34.7 hours. *See* Pechman Decl., Dkt. 22-1 ("Billing Records"), ¶ 21. These hours are so high in light of the facts and procedural history of this case that the Court questions the accuracy of the records. But even if the records are accurate, the Court finds that the reported hours are unreasonable.

The factual issues in this case were open-and-shut. This is a single-plaintiff, two-defendant case, in which the plaintiff worked as a line cook for the defendants for no more than one year. *See* Compl. ¶ 6. According to Plaintiff, the only factual disputes were whether Plaintiff was an exempt employee and the precise number of hours that Plaintiff worked. *See*

9

Pl.'s Ltr., Dkt. 19 at 2; Pl.'s Mem. of Law at 11. A review of the billing records shows that the time that the attorneys expended on the exemption issue was less than 3 hours, and the issue was addressed early in the litigation and does not appear to have required extensive legal research.[3] Furthermore, the parties in this case settled after a single mediation session (which Pechman did not attend), before any motion practice or formal discovery were required, and before the parties had to appear for a single court appearance. All of these facts weigh in favor reducing Plaintiff's fee award.[4]

The billing records reveal significant excesses and redundancies. Plaintiff's attorneys allege that they spent more than 5.8 hours drafting, discussing, and revising the Complaint in this case.[5] This amount of time is unreasonable, particularly for experienced FLSA attorneys, inasmuch as the Complaint is short and that the allegations are, for the most part, boilerplate statements made in nearly every wage-and-hour case. *See, e.g.*, Compl. ¶¶ 1–4, 9–11, 13, 17, 25–54. Similarly, Plaintiff's counsel allegedly spent 1.6 hours drafting, discussing, and revising the three-page "fairness letter" filed with the Court on March 11, 2019,[6] almost all of which is boilerplate language relating to the factors for approval of a settlement agreement. *See* Ltr., Dkt. 19. And Plaintiff's counsel allegedly spent 2.5 hours drafting and revising a mediation

---

[3]     *See* Billing Records at 5/9/2018, 5/11/2018, 5/18/2018, 5/21/2018, 8/21/2018. This issue should have required little to no research by a seasoned FLSA attorney, as the issue arises with some frequency in these cases and the plaintiff worked as a line cook (which is not an occupation that is typically exempt).

[4]     Plaintiff argues that conversations with the mediator continued for "nearly two months" after the in-person mediation session. Pl.'s Mem. of Law at 11–12. The billing records, however, show that Plaintiff's attorneys billed no more than 3 hours between the date of the mediation session (12/10/2018) and the date that the parties notified the Court that they had reached a settlement in principle (2/13/2019). Almost all of the entries during this time are for 0.1 hours, suggesting that the actual time expended may have been even less.

[5]     *See* Billing Records at 1/30/2018–2/16/2018, 3/5/2018, 8/8/2018, 8/9/2018, 8/28/2018.

[6]     *See* Billing Records at 3/5/2019–3/6/2019, 3/11/2019.

statement[7]; although the Court has not reviewed the mediation statement, this amount of time appears excessive, given that the facts of this case were straightforward and mostly undisputed.

In reviewing attorneys' fees, courts must consider "whether there is evidence of the effort expended by the attorney demonstrated through pleadings which were not boilerplate and through arguments which involved both real issues of material fact and required legal research." *Torres v. Colvin*, No. 11-CV-5309, 2014 WL 909765, at *3 (S.D.N.Y. Mar. 6, 2014) (quoting *Blizzard v. Astrue*, 496 F. Supp. 2d 320, 323 (S.D.N.Y. 2007)). "Plaintiffs should receive compensation only for hours that were reasonably expended." *Kahlil*, 657 F. Supp. 2d at 476 (citing *Hensley*, 461 U.S. at 433, 103 S. Ct. 1933). "District courts should exclude fees billed for time that is 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

Perhaps contributing to the excessive totals, the billing records are replete with entries for "0.1 hours" (many on the same day) for ministerial tasks that could not possibly have taken more than a few moments.[8] In total, Pechman and Marquez billed 7.5 hours in entries marked "0.1." Although "[t]he practice of billing a tenth of an hour for a discrete task is not inherently problematic . . . . when an attorney on a single day bills multiple 0.10 hour entries for discreet tasks, where the tasks individually appear likely to have occupied less than 0.10 hours and in total [appear] likely to have occupied less than the sum total of the 0.10 hour increments, such a practice can improperly inflate the number of hours billed beyond what is appropriate." *C.D. v.*

---

[7] *See* Billing Records at 12/3/2018.

[8] *See, e.g.*, Billing Records, Dkt. 22-2 at 7/23/2018 (call in which Plaintiff's counsel advised Defendant that they should not speak personally because Defendant was represented by counsel); 10/10/2018, 11/5/2018, 11/6/2018, 11/12/2018, 11/19/2018, 12/6/2018, 1/28/2019, 2/14/2019, 3/8/2019 (calls and emails relating to scheduling); 12/3/2018, 12/13/2018, 12/14/2018, 12/18/2018, 1/3/2019, 1/18/2019, 1/18/2019, 1/29/2019, 2/6/2019 (calls and emails conveying and responding to settlement offers).

*Minisink Valley Cent. Sch. Dist.*, No. 17-CV-7632, 2018 WL 3769972, at *8 (S.D.N.Y. Aug. 9, 2018).

The billing records reflect approximately 1.0 hour of a law clerk's time filing documents on ECF, downloading documents, and performing other clerical duties.[9] Marquez, the associate on the matter, billed for clerical tasks on at least two occasions, totaling 0.5 hours.[10] "[P]urely clerical" work such as this is not recoverable in attorneys' fees. *Lizondro-Garcia*, 2015 WL 4006896, at *9 (citing *Kahlil*, 657 F. Supp. 2d at 478); *see also, e.g.*, *Agudelo v. E & D LLC*, 12-CV-960, 2013 WL 1401887, at *3 (S.D.N.Y. Apr. 4, 2013); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 302 (E.D.N.Y. 2012).

### 4. Conclusion

In the March 21 Order, the Court found that 22 hours (20 hours of Marquez's time (at $300/hour) and 2 hours of Pechman's time (at $500/hour)) was a reasonable estimate of the amount of time necessary to prosecute this case. Dkt. 23. The Court did so by reducing Marquez's hours by about 45 percent and taking a modest reduction of Pechman's time. Recognizing that the "essential goal" in calculating attorneys' fees is "to do rough justice, not to achieve auditing perfection," *O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357, 367 (S.D.N.Y. 2018) ((quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)), those reductions, given the concerns discussed above with the reported hours, are entirely reasonable in order to calculate the lodestar.[11] *See also Kahlil*, 657 F. Supp. 2d at 476 (approving of "across-the-board reductions" to billing records).

---

[9]    *See* Billing Records at 8/29/2018, 8/30/2018.

[10]   *See* Billing Records at 9/10/2018, 9/18/2018.

[11]   A 45 percent reduction would also be appropriate had the Court deducted the excessive and redundant hours from the billing records. After deducting from the total amount of time spent on this case (38.3 hours) the time spent on the Complaint (5.8 hours), fairness letter (1.6 hours), mediation statement (2.5 hours), clerical matters

The lodestar was calculated to be $7,000. *See* Dkt. 23. This Court has reviewed many *Cheeks* applications for FLSA cases that have settled at similar stages of the proceeding. Twenty associate hours and two partner hours are generous estimates (albeit on the high side) of the number of hours reasonably spent in such litigation.

In the March 21 Order, after calculating the lodestar, the Court applied a multiplier of 1.3. *See* Dkt. 23. In determining whether and to what extent to award a multiplier, courts consider the same factors as those relevant to determining the reasonableness of a fee generally: the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of the litigation; and so forth. *See Lizondro-Garcia*, 2015 WL 4006896, at *10 (citing *Goldberger*, 209 F.3d at 50). This was straightforward FLSA litigation that was neither large nor complex. This case, like many FLSA cases, involves virtually no risk to the Plaintiff's attorney, assuming a reasonable job is done at the intake stage, but there, of course, is some risk inherent in any case accepted on a contingency basis. Accordingly, the circumstances warrant a lower multiplier than would be appropriate in either a more complicated FLSA case or one that proceeded to discovery or trial. Nevertheless, *some* multiplier is appropriate here, in order to ensure that Plaintiff's counsel is adequately compensated for both time and risk. On March 21 and now, the Court believes a multiplier of 1.3 is more than sufficient for these purposes, particularly because the Court has assumed a generous hourly rate for both Pechman and Marquez. *See, e.g.*, *Velandia*, 2018 WL 3418776, at *4 (awarding a multiplier of 1.2 in a case prosecuted by Pechman and Marquez); *Cortes*, 2016 WL 3455383, at *9 (collecting cases and

---

(1.5 hours), and in entries of 0.1 hours (7.5 hours), the time remaining is 19.4 hours. The difference between this figure and the number of hours used for the lodestar (22.0 hours) is 2.6 hours. That is a reasonable estimate of the amount of time that these tasks should have taken, given the simplicity of this case. And in any event, after calculating the lodestar, the Court will add a multiplier in order to ensure that Plaintiff's counsel is adequately compensated for these tasks.

applying a multiplier of 1.24).[12] Multiplying the lodestar, $7,000.00, by 1.3 yields $9,100.00, the amount that the Court stated in the March 21 Order that it would approve.

For all these reasons, the Court DENIES Plaintiff's request to reconsider its March 21, 2019 ruling that it would approve attorneys' fees of no more than $9,100. No later than **August 23, 2019**, the parties must resubmit their settlement agreement to the Court for approval. If the parties fail to resubmit their agreement by that date, the Court will order the parties to appear for an initial pretrial conference, in order to set a schedule for discovery.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for reconsideration is DENIED. No later than **August 23, 2019**, the parties must resubmit their settlement agreement to the Court for approval. If the parties fail to resubmit their agreement by that date, the Court will order the parties to appear for an initial pretrial conference, in order to set a schedule for discovery.

The Clerk of Court is respectfully directed to close the open motion at Dkt. 24.

**SO ORDERED.**

Date: **August 8, 2019**
New York, NY

_____
VALERIE CAPRONI
United States District Judge

---

[12] Plaintiff's counsel argues that the March 21 Order applied a multiplier "less than that applied in other FLSA cases," pointing to cases in which multipliers above 6.0 were approved. Pl.'s Mem. of Law at 7. Those cases are outliers, however. "[A]s a rule, post-*Goldberger* courts . . . have generally refused multipliers as high as 2.03." *Sakiko*, 58 F. Supp. 3d at 438 (quoting *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 129 (S.D.N.Y. 2009)).